The third case on the call today is No. 128141, Darius Duniver v. Clark Material Handling Co. Agenda No. 15, Counsel for the Appellant. Are you prepared to proceed? May it please the Court. Julie Tischer on behalf of the Defendant Battery Handling Systems, and I am here today presenting argument on behalf of all defendants. On January 16, 2019, Mr. Duniver filed a personal injury lawsuit in the Circuit Court, seeking recovery for a significant leg injury. A little more than three weeks later, he filed a petition in bankruptcy court, and in federal court, Mr. Duniver said he had filed no personal injury lawsuits. The issue here is whether the Circuit Court abused its discretion by invoking the doctrine of judicial estoppel to dismiss Mr. Duniver's action. This appeal presents the Court with an opportunity to address some significant issues that were raised by the appellate court's decision. The first is the standard of review for the reviewing courts when they're faced with a judicial estoppel dismissal. And in the appellate court's decision, we ask what happened to the abuse of discretion standard. Secondly, this Court set the standard for what constitutes a benefit received under the judicial estoppel doctrine. This Court said that if a debtor receives some benefit through bankruptcy proceedings, that's enough to invoke the doctrine. The appellate court set a new standard and said that a significant benefit had to be conferred, and that that significant benefit had to be a complete discharge of the debtor's debt. It's important to keep in mind here the purpose of the judicial estoppel doctrine. It's designed to prevent a litigant from saying one thing in one judicial proceeding and saying completely the opposite in a second judicial proceeding. The purpose behind the doctrine is an important one. And in this particular case, it involves both the sanctity of the oath, because Mr. Duniver was under oath in bankruptcy court, and it involves the sanctity of judicial proceedings themselves. The focus of the doctrine is on the actions of the litigant and how those actions impact the court system. The focus of the doctrine is not on the relative culpability of the parties. The focus of the doctrine cannot be on the severity of Mr. Duniver's injuries. It's what he did in bankruptcy court and how what he did impacts the judicial system. So when is judicial estoppel appropriate? This Court has given us five prerequisites that we must satisfy. He must have taken two positions that are factually inconsistent in two different proceedings, intending for the fact finder in each of those proceedings to accept what he has said is true, and he must have received some benefit from what he did. Plaintiff challenged none of those five prerequisites in circuit court in response to the summary judgment motion, and he didn't just forget about it. Plaintiff's counsel, his trial counsel, listed those five prerequisites, listed all five of them, challenged none of them, including the benefits received prong. Understanding that by challenging one of those elements, he could have saved his lawsuit, he made the deliberate decision not to challenge any of the elements, including benefits received. We should construe that as an informed, deliberate choice that his counsel thought he couldn't challenge that prong, and he was right. Now, the trustee in bankruptcy could have pursued this claim, correct? Correct. And usually if the trustee in bankruptcy doesn't pursue a claim, then it reverts back to the bankrupt, correct? Well, once he's filed a bankruptcy petition, if the trustee is aware of the cause of action, the trustee can pursue the cause of action, or the debtor can pursue the cause of action for the benefit of his bankruptcy estate. But absent the trustee's knowledge that there was a cause of action, the trustee can't pursue it. If what you say is correct, then the defendant then is free from any liability under your argument, correct? Yes. But again, the focus is not on the culpability of the parties. The focus isn't on what happens to us. The focus in the judicial estoppel analysis has to be, what did Mr. Dunover say in bankruptcy court? Did he tell the truth? Excuse me, but does the debtor have to seek the permission of the trustee to pursue a lawsuit on behalf of the bankruptcy estate? Once the petition is filed, he can... Does he need permission from the trustee first? Well, he can go into circuit court and ask to pursue the action on behalf of the bankruptcy estate, and once he advises the trustee, I have a personal injury lawsuit, then I think he can negotiate with the trustee as to whether the trustee will pursue the action himself, or whether he will allow the debtor to pursue the action for the benefit of the estate. So you're saying, yes, the debtor has to ask the trustee whether he can pursue it. I don't know if I would say ask. I would say it's part of the proceedings that go on in bankruptcy court, but the trustee in this case never had an opportunity to make that decision. The trustee was never advised of this lawsuit. That's what I was asking. Pardon me? That's what I was asking. Yeah. Also, it's part of the proceedings. How is... It's part of the proceedings in the bankruptcy court. That's a personal injury lawsuit. Is that what you're saying? When he files his petition in bankruptcy, he is specifically asked, both in the paperwork and by the trustee, are you suing anyone? And when he tells the trustee no, then the trustee has no opportunity to assert its rights to pursue the case on behalf of the bankruptcy estate. So if this court gets beyond the forfeiture of the benefits received argument, and I don't think it should, but if it does, plaintiff still fails. The appellate court accepted Mr. Dunover's overarching argument that you only receive a benefit during bankruptcy proceedings if you receive a complete discharge of your debt. But federal authority and the Smith decision of the third district say otherwise. And the federal courts are the courts charged with interpreting bankruptcy laws. In the federal courts, we cited a number of decisions from across the United States in our briefs that established that the automatic stay that a debtor gets as soon as he files a petition in bankruptcy and the confirmation of his bankruptcy plan are both benefits that are conferred on a debtor once he files for bankruptcy. Counsel, you indicated that the appellate court created a new standard basically requiring a significant benefit, but was that included in the appellate court's analysis or basically just in a concluding sentence? I think it was both, actually, Your Honor. The appellate court said it had to be a significant benefit, and then it said that that benefit had to be a complete discharge of debt. It wouldn't accept the automatic stay. The appellate court did not accept the automatic stay, nor did it accept the confirmation of the bankruptcy plan as benefits. So I think when it said a significant benefit, that's what it was talking about. It was talking about a complete discharge of debt. And in Seymour, this court said we just have to show that he received some benefit. And that's qualitatively very different than saying a significant benefit, whatever that means. Some benefit means a stay on any collection proceedings. The moment Mr. Dunover filed his petition in bankruptcy, debt collection efforts were stayed against him. The city of Chicago had a pending collection action against him. When he filed his petition, that was stopped dead in its tracks. That's a benefit. He had pages and pages of other creditors. Once that stay was in place, none of those creditors could pursue Mr. Dunover. None of them could file a collection action. His debt was not discharged. His debt was not discharged. So at the end of the day, was there really a benefit? Yes. The question is, was there a benefit to Mr. Dunover? And the answer to that is undoubtedly yes. For one year, there was a stay on any collection efforts against him. For one year, Mr. Dunover didn't have to worry about being sued, about getting letters, about being harassed, about having to go to court. He also received a confirmation of his bankruptcy plan, and that plan said, you don't have to pay your debts back at their full value. We're going to allow you to pay 10% of your $43,000 worth of debt. You only have to pay $4,300, and we're going to give you three years to repay that debt. And on top of that, you don't have to pay interest charges or penalties. If we don't pay our credit cards in 30 days, the rest of us get charged significant interest. But at the end of the day, he was not discharged. What's the impact of that? The impact that he did not get discharged. The impact, for the purposes of the judicial estoppel analysis, the fact that his debt wasn't discharged is irrelevant because he still received. What happens when he was not discharged? What happened to the debts that weren't paid off? What happened to them? Then those debt collectors can keep pursuing him once his bankruptcy case is dismissed. But again, the analysis turns on what benefit did he receive by misleading the bankruptcy court during the pendency of his bankruptcy proceedings. That's a one-year stay. A one-year stay and a confirmation of his bankruptcy plan. So for that one-year period of time, he didn't have to face any additional collection actions. The city of Chicago couldn't move forward on their collection action. But at the end of the year, when there's not a discharge, now everybody can pursue any of the debts, correct? Yes, but the focus is not was there harm to the creditors ultimately. That can't be the focus. The focus in the judicial estoppel analysis is what did this debtor do and how did he benefit? That's the reason I'm asking these questions. So the benefit that you can explain to me is for one year there was a stay. That's the only benefit he got? No, that's not the only benefit. And when we talk about the stay, we have to talk about what that means. That was a stay on the collection action that was already proceeding against him, and it prevented any of his other 8 to 10 pages worth of creditors from pursuing him. For one year, he had the benefit of that relief. That's what I mean, he had the benefit of one year. And the confirmation of his bankruptcy plan, which told him, while this plan is confirmed, you only have to pay your debts back at 10% of their value, and we're not going to charge you interest or penalties.  But that was for the one-year period. That was for the one-year period. After that, any creditor can do anything they want, right? Yes. It was only for that one-year period. But what if the period had been two years? What if the period had been three years? No, the period here was one year. It was. And to apply this kind of argument, the person hasn't really received a benefit, but he still owes these debts. But in the meantime, he enjoyed all the benefits that bankruptcy provides while not telling the truth in bankruptcy court. And some benefit. Let's say that, under the federal cases, that's enough, and now we've satisfied the five elements. Then the court goes on to determine, as an equitable matter, whether or not estoppel should apply. What Justice Carter is talking about, could that factor then into the abuse of discretion of the court, or whether or not the trial court abused its discretion in deciding whether or not to apply estoppel? What the circuit court is asked to do in Seymour is to, once the five prerequisites have been satisfied, is to look then to whether there's evidence of intent to mislead and whether he benefited from that intent. And, again, I would say the federal courts have universally recognized the stay and the confirmation of the plan as benefits that a debtor receives, short of discharge of debt. The federal courts do not require discharge of debt to find benefit. So then we move to the intent prong. No, well, on the judicial estoppel, the court has to decide whether or not judicial estoppel is there, right? Yes. And what's the standard for that? That is an abuse of discretion standard. And so the question is, this court in finding it wasn't justified in this unique set of facts, whether that was an abuse of discretion. And as the Justice said that, that's the reason I'm asking about, you're talking about one debt, you're talking about a year, and you're talking about a determination by the court that in these particular circumstances, we're not going to say the first sentence. But the abuse of discretion we're looking at is whether or not the trial court abused its discretion, correct? That's right. And the trial court here, first of all, the appellate court made no finding that the circuit court abused its discretion. And the circuit court didn't. The circuit court conducted just the type of analysis this court required in Seymour. The court first looked to find the five prerequisites and said, plaintiff didn't challenge any of them, then moved on to the question of intent. And the circuit court had multiple points of evidence that led it to its intent finding. Mr. Donover swore in his bankruptcy paperwork, in his schedule of properties, have you filed any third-party complaints? He answered no. In his statement of financial affairs, he was asked, please list any and all lawsuits to which you're a party within the last year, including personal injury lawsuits. He did not list his personal injury lawsuit, but he did list the collection action that was pending against him. And then in three separate areas, Mr. Donover signed this paperwork in his own hand, swearing under penalty of perjury that all of these answers were true and correct when they were not. And then ultimately, at the creditors, the Rule 341 required creditors meeting, the trustee put him under oath and asked him, are you suing anyone? And he said no. The circuit court, the appellate court's job was to look at this and say, did the circuit court abuse its discretion in finding evidence of intent based on those multiple points of evidence? Was the circuit court's determination fanciful or arbitrary? That was the appellate court's job on the intent prong. Can I ask you a question? Yes. Was he represented by counsel in bankruptcy? In all three of his bankruptcy cases, he was represented by different bankruptcy counsel. And does he argue that he relied on his counsel? You know, the appellate court said, hey, we view the evidence of the like most favorable to Dunover, and therefore that's another reason to reverse the circuit court. What's your response to that? I have a couple of responses to that. First, reliance on a bankruptcy attorney doesn't save Mr. Dunover here. He read the paperwork. According to his own testimony, under penalty of perjury, I have reviewed these documents. My answers are true and correct. He signed that. It's his obligation to give truthful answers. And in the Cannon-Stokes case, the Seventh Circuit said it's not good enough to say I relied on my bankruptcy attorney. And in this case, we know that Mr. Dunover reviewed the paperwork and swore that he reviewed it. And then he answered the trustee's question at the 341 creditors' meeting. That wasn't his bankruptcy attorney's fault. The trustee said, Mr. Dunover, are you suing anyone? And he said no. That wasn't the circuit court's determination that that answer showed an evidence of intent to mislead was not fanciful or arbitrary. Did the bankruptcy trustee in this case abandon the plaintiff's personal injury claim? No. The trustee cannot abandon that personal injury claim unless it knows about it. And the bankruptcy process requires a hearing in order to have the trustee declare that it's abandoned the cause of action. So no. The plaintiff did disclose the worker's comp claim based upon this injury. Does that create a factual issue that precludes summary judgment? Well, I would go back to when we're looking at evidence of intent, the circuit court is the finder of fact. So when the circuit court looked at these points of evidence and said, I find an evidence of intent, it's not the reviewing court's job to look at that same evidence and say, but I don't find an evidence of intent or I find a question of fact on evidence of intent. The circuit court had all of that information and made the determination, I see evidence of intent here. And if these facts aren't evidence of an intent to mislead the bankruptcy court, then the standard has to be that the debtor must admit an intent to mislead the court. And that can't be the standard because that will encourage debtors to be deceitful until they get away with it. And in this case, be deceitful and then say, I didn't mean it. That cannot be the standard. If the focus here is the protection of the sanctity of the oath and the sanctity of judicial proceedings, these false answers in bankruptcy court cannot be condoned because that disincentivizes every debtor to be truthful in bankruptcy court. So for these reasons... How are bankruptcy petitions amended all the time? Because people fail to disclose some of their debts, sometimes considerable amounts. I mean, bankruptcy petitions are amended a lot, aren't they? Yes, and he could have amended his and disclosed his personal injury action. These weren't, this is an inadvertence. We have six different instances where he gave a false answer to very specific questions. He never elected to amend his bankruptcy petition until it was way too late, until after he was caught. And this court has said that's not good enough. You can't amend once you're caught because that would just tell debtors, go ahead and try it, and then if you're caught, don't worry about it. So the defendants would ask that this court reverse the appellate court's decision and affirm the circuit court's summary judgment order. Thank you very much, Counsel. Good morning, Your Honors. Michael Rassak. I'm here on behalf of the plaintiff's appellate, Darius Donover. The key, I believe, to resolving the dispute is that this matter is here on summary judgment, and it's not only here on appeal from a summary judgment, but it's here on an appeal from a summary judgment in which the party seeking summary judgment had to prove their case by clear and convincing evidence. And that, I believe, is the tripping point for the defendants in this case. I can appreciate their argument, as anybody could, that if you make misstatements on a document, there could be ramifications for that. But in this case, recalling that the appellate court had this case for de novo review, at least as to the five elements for judicial estoppel, I would argue that the court had de novo power over the entire matter. And if I can digress for one moment, because in this Court Seymour opinion, I believe it's clear that de novo review applies to the five elements for judicial estoppel. The second step is whether or not there's deceit. And then the third step is whether or not the court believes estoppel is applied, should be fair. And reading Seymour, the Court makes clear, I believe, de novo for the first five. I believe the Court makes clear it's de novo as to whether or not the party intended to deceive. And then in the third step, it seems to see it does. It suggests discretion as to whether estoppel applies. But then in the very next sentence, it says, however, and it talks about discretion. It said, because it's summary judgment, we have de novo review. It's difficult for me to tell a court this is what you meant or not meant, but I would argue that opinion at least suggests de novo applies all the way through. Counsel, with de novo review of intent to deceive, I mean, that sounds rather odd in terms of the decision that a reviewing court would have to make having, you know, not observed the individual or not necessarily making a determination on the facts before it. How does that make sense? I would agree if there had been a hearing here. And the problem is we didn't have a hearing. We had summary judgment. And that's the source of all the issues here. If there had been a hearing, if there had been anything other than paperwork, I would not be in this position. But all the trial court had is the same thing that the appellate court had, which is the same thing this court had. Over the years, those opinions go back and forth about what a court should do when I am sitting as a judge and I have the same paperwork that the trial court judge has. I think counsel in their brief said, so why do we have trial courts? We have trial courts to sort these things out and present them in an organized fashion to the appellate court. And in this case, going back, I go back to the beginning. When we talk about a benefit, what counsel indicated to you and what they said in their brief is true. My client did say I didn't sue anybody. And if that ended it, I would have a much more, much weaker position, I believe here, in terms of the facts and whether or not either there's de novo review and we should avail or there was an abuse of discretion. But in the very next section of the bankruptcy application, are there some other claims? And at that point, he listed his workers' compensation claim, but not his personal injury claim. And some of the other bankruptcy cases, the federal cases, have said when we look at intent, we look through the form. And if somebody, if we're looking for intent, if somebody intended to do something to deceive, they wouldn't have revealed their other assets. And he revealed his workers' comp case. And then at another point, no case is revealed. And the same thing is seen in the trustees' meeting. The questions in the we don't have a video of the trustees' meeting, but we've seen the ads on late night TV. We know that these are not big bankruptcy cases. We know people are looking to bring in business. And I'm not criticizing the lawyer. The trustee sits there all day long with case after case where he's looking at, in this case, a gentleman lost his leg in an accident, no income. He knows this isn't going to work out well. Are you suing anybody? No. Nobody stopped him at that point. Of course he was suing somebody. He was suing his employer and workers' comp. Is that technically a lawsuit? No. Would you expect the person sitting there to think that? Clearly no. He didn't say anything. Is anybody suing you? No. Well, people were suing him. He had collection actions against him. All I'm saying is that illustrates that at least as to this individual, he really did not appreciate what he was being asked. Otherwise, he wouldn't have given those answers. And bottom line is looking at it, the lawsuit itself may have some significance. It's difficult to conceive that somebody in this individual's position would actually conceive of a plan to try. I'll not hide my workers' compensation case, but I will hide my personal injury case, which has been filed and it's public. When we look at all of that, all I'm saying is that clear and convincing evidence that this gentleman intended to deceive and to profit from it. There's a further point, though. This court in Seymour said when we look to see if there was deceit and when we look to see if there should be estoppel, we look to see the significance and the impact of the deceitful action. And that goes with our benefit point here. There was no significance, and I can prove it because when he filed his amended application, just segueing just a little bit back, he didn't file it. Counsel, is that the standard, though, a significant benefit or is it some benefit? The appellate court used the word significant in one place but a benefit in another. I'm not suggesting that there has to be a significant benefit, but I believe that the cases show that there has to be some real benefit. In this case, they started the trial counsel in this case informed the court, I think the record shows in September, that Mr. Dunnevar was trying to have his lawyer amend his bankruptcy schedule, and that did not occur until February, I believe. It just took a long time in bankruptcy court to do it. But when he, and this is my point, when he amended his schedule in bankruptcy court, nothing changed. Nobody did anything different. Nobody rushed in because there is no evidence that anybody was ever trying to collect anything from this gentleman. Nothing happened. And, in fact, when his lawyer filed that amended application, he still valued this case just like the workers' compensation. It's a compensation case. It's zero. Can we go to the elements just for a second? Yes, sir. Do you agree that this case is somewhat of an outlier as it relates to the Federal cases on what is some benefit? I mean, we've already talked about the end of the opinion talks about a significant benefit, and then in paragraph 20, the appellate court says he received no benefit. But that's clearly an opposite from the Federal cases. From the Federal cases. The problem, and to my benefit, to my client's benefit, the benefit of anybody in this position is that, at least to this point, the Illinois has not taken the draconian view that the Federal courts do it. In the Federal courts, we would not be successful in the Federal court. But we don't have that standard here. And I would argue there was no benefit because nothing changed. He got nothing. There was no evidence that people were pursuing him and stopped pursuing him. If you're going to come in and try and take away this gentleman's claim permanently and profit from it and cut everybody else off, I would think it would at least be a situation where if you're going to prove by clear and convincing evidence that my client had a benefit, you need to show that. You need to talk to these people. Who are the creditors? Are they pursuing you? There is no evidence of that. All we know is that there were claims. That's it. And without that, he didn't really have any benefit. He wasn't going to pay anybody. The cases that are cited against us, there are numerous ones, you can see in each case a clear benefit. In one case, somebody's home was being foreclosed. Somebody else had, I think, $1.2 million they were able to hang on to. Somebody else was able to make payments for five years. It didn't happen here because his case was discharged because he didn't make payments because he had no money because he wasn't working because he lost his leg. In all of this, many, many years ago, a justice on this court suggested that the problem is how do we write the opinion? In this case, writing this opinion, I think you could say is the fact that he had this hypothetical, he had a stay, but it didn't matter, is that a benefit to him? Is that the proverbial peppercorn, or are we going to look at a realistic benefit? And if we look at a realistic benefit and you compare this case to every case that both sides have cited, I don't think there's another case that has this minimal of a benefit without potentially being zero. Does that lead into the third element that you were talking about, and that is the court exercising its discretion on whether a stop will be applied? Exactly. If one of the first five elements fails, then the court doesn't get to the second step to find a seat or the third step to find a stop. It never should have gotten to that point. That's at least how I read the Seymour case to say. And so the court was blocked, and it did otherwise. So I know, I think, your answer, but I just want you to be able to speak to it specifically. The opposing counsel enunciated several things that she indicated were some benefit. So your position is basically if you don't get a discharge, there's no benefit? No, it's possible to have a situation. We are not arguing for a discharge red line element. The Hillside case, I think they cited Smith case. The Smith case came up with a, well, if the plan is approved, that's a red line, that's the end of the case. All we're saying is that in this case, the benefits were hypothetical because he really didn't receive them. Nobody stopped pursuing him because nobody was pursuing him. But they were, for a period of time, prevented from even pursuing him if they wanted to. For a period of time, he didn't have to worry about his bank account being attached or something like that. But that does not amount to some benefit. That's correct, and that's why I was talking before about the peppercorn, a significant benefit. But you agree that the standard is not significant benefit. I agree. Yes, I have no problem with that. I don't think the appellate court meant that. The rest of its opinion, it understood. It was looking at these other cases. It was looking at the cases we cited. They talk about a benefit. But within there, should the benefit have some real meaning? Or is this a case where it should not be summary judgment? Is that a question of fact that should be taken care of either by a trial judge because it's an equitable remedy or by a jury in the underlying case? The distinguish between those two is not part of the argument below. But it's still summary judgment. Summary judgment means we were precluded from having a hearing of some kind. We didn't have that hearing. That hearing might well answer Your Honor's question. Somebody might say that was significant. The fact might say that's not. But that didn't happen here. No one saw this plaintiff. Nobody heard his story. Nobody knows what he looks like to this day. So you believe this should be remanded to have a hearing on the summary judgment? If we do not prevail on these facts so that we win the case, so to speak, yes, then I think the next step would be to have a hearing. You want to affirm the appellate court. Yes. Yes. We're looking at it. Yes, I'm sorry. I get excited. I wasn't trying to ask a trick question. No, no. I appreciate that. I do tend to somehow get a little excited once in a while. Now, what we're asking the court today, and unless there's further questions, is for affirmance. And the alternative would be, I think we've suggested, a remand for a hearing. And that would become the rule in future cases. Unless the court has further questions, that concludes our argument. Thank you. Thank you very much, Mr. Edson. Thank you. I can't disregard the forfeiture argument here on the benefits received wrong. This court has said that arguments that are raised for the first time in a motion to reconsider are waived on appeal. They're forfeited on appeal. That's been this court's longstanding rule. And, again, I will remind the court that in response to the summary judgment motion, the benefits received wrong went unchallenged. The circuit court said plaintiff has conceded the five prerequisites to judicial estoppel. I'm going to go forward and look for intent. And on the benefit received issue, even if you examine that issue, the federal authority is clear here. If this court requires a discharge of debt in order for a debtor to benefit in bankruptcy, then that just promotes gamesmanship in the bankruptcy system. Because what a debtor can do is file a personal injury action secretly, then file his bankruptcy petition, enjoy the automatic stay, enjoy the confirmation of his bankruptcy plan, and then voluntarily dismiss his bankruptcy case, all the while pursuing his lucrative personal injury action because then he can say, I never got a discharge in debt. I never benefited. That can't be the standard. And I'm not the only one that thinks that. The Williams decision, the Williams court said that you cannot say that it requires a discharge in bankruptcy in order to find a benefit received. The Williams court said that just encourages the debtors to not disclose the personal injury action and then manipulate their bankruptcy proceedings by voluntarily dismissing them, all the while enjoying the benefits. And when plaintiff says he didn't get a benefit, no creditor was going to pursue him, a creditor was pursuing him. There was an action pending against him by the city of Chicago. And as soon as he filed that bankruptcy petition, that action was stopped dead in its tracks. That alone is a benefit that he received. And his other creditors could do nothing. They had to sit and wait. I go back to all of us as debtors. We have to pay our bills. We have to pay them on time. We have to pay interest if we don't. We have to pay penalties. Mr. Dunover didn't suffer any of that for a year. A year where he didn't have to worry about any of that. That's a benefit that he received from misleading the court. Can you comment on counsel's procedure? Okay, we look at the five elements. They're all met. Then we look at intent to deceive. And let's say there is some evidence. Six times he didn't put in the lawsuit. And so there's some evidence of intent to deceive. Does that mean you win? Or does it go to this third step where then the court basically looks at it as an equitable remedy and then starts weighing things. What kind of benefit did the plaintiff get? Let's look at what he's losing. I mean, he's losing a big lawsuit. Potentially a big lawsuit. Is that the procedure? First, I'd go back to the purpose of judicial estoppel. It's not to protect him. It's to protect this court and all of the courts, including the bankruptcy court. So we can't be concerned about whether he's losing his lucrative personal injury lawsuit because he gave the bankruptcy court false information six times. In terms of this process of review, this is the way I look at it after Seymour. I think we need to provide evidence that we've satisfied those five prerequisites. And we have. And they went unchallenged. Then I think that's what's subject to de novo review. Did you prove those five elements? Once you get beyond that, this court has told the circuit courts, circuit court, you are the finder of fact. We are relying on you to look for evidence of intent to mislead. And the circuit court did its job here and meticulously pinpointed the evidence of intent. So when plaintiff says, well, there's a question of fact, that's like saying there's a question of fact after a jury verdict. We have given the circuit court this responsibility and said, you look to the evidence of intent. Tell us if you find evidence of intent. And then the way I see it is the reviewing court just looks at that determination and says, was that arbitrary? Was it fanciful for the circuit court to say, I find evidence of intent?  I don't think that the reviewing courts get to step into the circuit court's shoes and review the facts unless there's been an abuse of discretion. And that's what's missing here. That's what makes this case different than Seymour. In Seymour, the circuit court just found that the five prerequisites were satisfied and said, well, I think that mandates application of judicial estoppel, didn't review the evidence of intent, didn't exercise its discretion at all. But that's not the case here. The circuit court did exactly what this court asked the circuit courts to do in the judicial estoppel arena. It found the five prerequisites satisfied, and then it went to evidence of intent. And when we're talking about intent here, Mr. Dunover is stuck with his affidavit. The assumptions, the presumptions that his counsel has argued in the reviewing courts shouldn't even be considered by this court. Mr. Dunover gave two explanations in his affidavit. He said, I relied on my bankruptcy attorney. Well, we've discussed the problems with that. He's the one who reviewed the form, signed it in his own hand, said all of my answers are true. He's the one who answered the trustee under oath and said I'm not suing anyone. Plaintiff wants to suggest that those creditors meeting are perfunctory. But when you're sworn under oath to tell the truth, there's nothing perfunctory about that. That's serious business. He answered falsely. His second excuse, he says, I relied on my bankruptcy attorney. Oh, and it was a mistake. If my attorney had asked me, I would have told him. The problem with that, quote, innocent explanation is the trustee asked him that very question. So to suggest I would have told my attorney if he asked me, the trustee asked him that question, and he said no. You know, the trustee didn't know about it. It didn't abandon its claim. So the claim really is still under the authority of the bankruptcy trustee, is it? Yes. I mean, so any attempt to go forward would be the bankruptcy trustee, correct? The bankruptcy trustee, if the bankruptcy trustee wanted to pursue this action to the limit of the creditor's debt, I think the trustee could do that, to the limit of the creditor's debt. So doesn't that go to the benefit argument? No. You and I aren't going to agree on the benefit argument, I don't think, Your Honor. And I have federal authority on my side. We have cases across the state court. Yes, we are. But I will again point to the fact that we're talking about bankruptcy statutes that are enforced and interpreted by the federal courts. And the federal courts say that a stay on collection of debt and a confirmation of a plan are benefits. And, you know, we're in the real world here. Those are benefits. If someone had said to Mr. Donover, you know what, you don't need the automatic stay, do you? Do you think he would have said, no, that's of no benefit to me. You go ahead and let the city of Chicago pursue me. Do you want to pay 10 percent of your debt or do you want to pay all of it? I'll pay all of it because I don't think that's a benefit to me. Those were benefits that he actually received. They're concrete, real benefits that he enjoyed. So, again, I would ask the court to reverse the appellate court's decision and to affirm the summary judgment in favor of the defendants. Thank you. Thank you, Counsel. Thank you so much, Counsel. Number 128141, Darius Donover v. Clark Material Handling Company, will be taken under advisory. Thank you.